[No. C005682. Third Dist. July 17, 1989.]

DARRELL SMITH, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, COUNTY OF
BUTTE et al., Respondents.

COUNSEL

Loy H. Watkins for Petitioner.

Jonarde Raab, James C. Cuneo, Richard A. Weyuker and Bolling, Walter & Gawthrop for Respondents.

OPINION

**BLEASE, Acting P. J.—** In this review of a workers' compensation decision we hold that heart disease "manifests itself" when revealed by a medical examination of a deputy sheriff, giving rise to the presumption of Labor Code section 3212.5[1] that the disease arose out of and in the course of that employment.

Petitioner Darrell Smith seeks annulment of an order following reconsideration by respondent Workers' Compensation Appeals Board (Board) which denies him a disability award. Smith has been a deputy sheriff of the County of Butte since 1971. Medical tests in 1987 disclosed that he had earlier suffered a heart attack. He sought a disability award invoking the presumption under section 3212.5 that heart trouble "which develops or manifests itself during a period while such . . . deputy sheriff . . . [is so employed]" arises out of and in the course of such employment. The Board denied an award finding the presumption inapplicable. The Board reasoned the heart trouble did not develop or manifest itself during the employment because there was no way to tell whether the heart attack happened since Smith became a deputy sheriff. We will annul the order; regardless when Smith's heart trouble developed, it manifested itself in 1987.

*Facts and Procedural Background*

Smith has been employed as a regular full-time deputy sheriff by the County of Butte (Butte) since September 26, 1971. A physical examination in the spring of 1971 disclosed no hint of heart trouble. In 1987 Smith made a claim for disability indemnity for hypertension attributable to his stressful employment. His physician and Butte's physician disagreed about the causation and the parties agreed to a third medical examination by Dr. Malcolm McHenry. McHenry examined Smith on September 25, 1987. He opined that Smith's hypertension was not caused by his employment. However, in the course of the examination he obtained an electrocardiogram which he interpreted as abnormal and indicating "an old inferior wall

---

[1] Unless made otherwise apparent, references to sections are to the Labor Code.

myocardial infarction."[2] McHenry arranged for a thallium stress test and interpreted the results as indicating right coronary disease. He suggested that this was heart trouble within the meaning of section 3212.5 and that Smith should be precluded from heavy work.

The parties deposed McHenry; he testified as an expert witness in cardiology as follows. Smith has "ischemic heart disease with a prior asymptomatic myocardial infarction . . . ." McHenry is 100 percent sure that Smith has coronary artery disease. He supported the diagnosis by reference to the electrocardiogram and the thallium stress test and added: "I might go on just to anticipate your questions. Silent ischemia or silent infarction is well known in the cardiology literature. Framingham suggests that up to 20 percent of the patients whom they followed serially for many years had heart attacks that were not clinically apparent. One cannot rationally argue that the absence of pain means that this patient could not have had a heart attack."

The following colloquy ensued.

"Q. [Counsel for Butte]: . . . Are these tests able to tell you when the heart attack occurred?

A. [McHenry]: No.

Q. [Counsel for Butte]: Is there any way that you can state within a reasonable medical probability therefore that this man's heart attack, if it in fact did occur, developed or manifested itself during the period he was employed as a police officer?

A. [McHenry]: I cannot time it. There is no way in which you can time an asymptomatic event.

Q. [Counsel for Butte]: And there is no testing that you can perform or that you can subject this man to that would give you that knowledge.

Q. [McHenry]: There is no way that I could ever arrive at the time at which this event occurred, unless we really sat down and historically he might be able to recollect something that he had not told me in September of 1987."

Thereafter, at the conclusion of the deposition, McHenry testified: "I would feel it was unlikely that he had his heart attack at or less than the age

---

[2] Stedman's Medical Dictionary (5th ed. 1982) pages 706-707 and 728, defines an infarction as a sudden insufficiency of blood supply that produces an area of dead tissue. A myocardial infarction is an infarction of an area of the heart muscle, usually as a result of closing of a coronary artery. Ischemia is local anemia due to mechanical obstruction (mainly arterial narrowing) of the blood supply.

of 27, which would be his age on entry into the Butte County Sheriff's Department."[3]

The worker's compensation judge found that Smith had suffered compensable coronary artery disease and awarded permanent disability indemnity. Butte petitioned for reconsideration by the Board. The Board granted the petition explaining its action as follows. There is no evidence for a finding that Smith's heart trouble either developed or manifested itself during the applicable period of employment. McHenry testified he could not tell when the heart attack occurred. His further testimony that it is unlikely that Smith had the heart attack at or less than the age of 27: "is speculative and again does not meet the standard of reasonable medical probability that the myocardial infarction developed or manifested itself during applicant's period of employment as a Deputy Sheriff."

The Board concluded that the presumption in the statute did not apply and that without the presumption Smith could not prevail because he had not met his burden of showing that his heart trouble arose out of and occurred in the course of his employment.

## Discussion

Two provisions of section 3212.5 govern this case.[4] It provides that a compensable "injury" to specified peace officers, including a sheriff, "includes heart trouble . . . which develops or manifests itself during a period" while the officer is employed. It also provides that "[s]uch heart trouble . . . so developing or manifesting itself shall be presumed to arise out of and in the course of the employment; provided, however, that the [peace officer] shall have served five years or more in such capacity before the presumption shall arise . . . ." The question we must decide is whether discovery by a physician of heart disease by diagnostic means, which has caused no symptoms perceived by the patient, is heart trouble "manifesting itself" within the meaning of section 3212.5. The answer is yes.

---

[3] The testimony was predicated upon the hypothesis that Smith had been a deputy sheriff for 20 years.

[4] Section 3212.5 in pertinent part provides: "In the case of a . . . deputy sheriff . . . employed upon a regular, full-time salary, the term 'injury' as used in this division includes heart trouble and pneumonia which develops or manifests itself during a period while such . . . deputy sheriff . . . is in the service of . . . the sheriff's office . . . . The compensation which is awarded for such heart trouble or pneumonia shall include full hospital, surgical, medical treatment, disability indemnity, and death benefits as provided by the provisions of this division. [¶] Such heart trouble or pneumonia so developing or manifesting itself shall be presumed to arise out of and in the course of the employment; provided, however, that the . . . deputy sheriff . . . shall have served five years or more in such capacity before the presumption shall arise as to the compensability of heart trouble so developing or manifesting itself. This presumption is disputable and may be controverted by other evidence, but unless so controverted, the appeals board is bound to find in accordance with it."

Smith argues that the only available inference is that his heart trouble "manifested itself" in 1987 when Dr. McHenry noted the abnormality in his electrocardiogram. Butte's sole rejoinder is that the diagnostic revelations do not constitute a manifestation because Smith "never experienced symptoms from his asymptomatic myocardial infarction." It asserts that heart trouble only manifests itself when it produces symptoms which are subjectively perceived by the patient. The assertion is unsupported by explanation and finds no support in the text and policy of the statute.

The presumption pertains to heart trouble that "develops or manifests itself" during the applicable period of employment. To say that "heart trouble develops," in ordinary speech, is to say that condition occurs or progresses in severity. To say that it "manifests itself," in the reflexive usage of section 3212.5, is to say that it reveals itself as existing. (See 6 Oxford English Dict. (1978) p. 122: "Of a thing: To reveal itself as existing or operative.") Nothing in the term "manifests itself" requires or suggests that the mode of manifestation is limited to the subjective perceptions of the disabled worker. Nothing in the context of the statutory presumption suggests or commends such a limitation.

The presumption is addressed to the question whether a heart injury has been caused by the claimant's employment; whether (1) "at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment" and (2) "the injury is proximately caused by the employment . . . ." (§ 3600, subds. (a)(2), (a)(3).) ■ The claimant has the burden of establishing the requisite legal causation. (E.g., *Liberty Mut. Ins. Co.* v. *Ind. Acc. Com.* (1946) 73 Cal.App.2d 555, 559 [166 P.2d 908].) ■ The presumption is manifestly designed to aid peace officers in establishing the ultimate fact of causation.

The cause of disabling injury to the heart is a recurrent problem in the worker's compensation system. (See Note, *Cardiac Claims Under California's Workmen's Compensation Law* (1970) 21 Hastings L.J. 745; Larson, *The "Heart Cases" In Workmen's Compensation: An Analysis and Suggested Solution* (1967) 65 Mich. L.R. 441.) Most claims of employment-caused heart disease have involved a preexisting heart condition which is claimed to have been aggravated by the employment so as to produce a disability. (See *Lamb* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274, 281 & 281, fn. 6 [113 Cal.Rptr. 162, 520 P.2d 978].) Absent the presumption in section 3212.5, the division in medical opinion whether the stress of employment plays a role in the development and progression of heart disease renders the outcome of such claims haphazard. (See *City and County of San Francisco* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 103, 108-110 [148 Cal.Rptr. 626, 583 P.2d 151].) Embedded in the presumption is a

legislative determination that the mental and emotional stress of protracted service as a deputy sheriff does cause "heart trouble" and a policy that when "heart trouble" develops or manifests itself during such service it is reasonable to attribute it to that employment.

█ Butte County's reading of "manifests itself" lends itself to wholly arbitrary consequences. It would make the causal presumption available to Smith if his condition caused minor chest pains which later was revealed by medical diagnosis as caused by heart disease. It would deny the presumption to Smith in this case because no such symptoms preceded the diagnostic revelations of the electrocardiogram and related medical tests. This distinction does not find semantic support in the reflexive use of "manifests" or in the policy which informs the presumption. The same degree of disability could obtain in both cases and no reason is suggested why the presence of subjectively perceived symptoms makes more plausible an inference that the heart trouble has been caused by the employment.

The case law interpretation given the identical language of the related provisions of section 3212 supports Smith's reading. In *State Employees' Retirement System* v. *Workmen's Comp. App. Bd.* (1968) 267 Cal.App.2d 611, 616 [73 Cal.Rptr. 172], we observed: "Obviously, heart disease may develop without manifesting itself. It may develop as an unrecognized, *undiagnosed,* asymptomatic condition, displaying or manifesting itself only after the commencement of employment." (Italics added.) In *Stephens* v. *Workmen's Comp. Appeals Bd.* (1971) 20 Cal.App.3d 461, 465 [97 Cal.Rptr. 713], the court said: "the presumption is available . . . in cases where heart trouble has 'manifested' itself (i.e., has produced definite symptoms such as angina attacks *or abnormal electrocardiograms*) . . . ." (Italics added.)

There is an additional reading, not advanced by Butte, that must be addressed since it may have formed the basis for the Board's action. The Board may have reasoned that Smith's heart trouble "manifested itself" at the time of the infarction and that this time was not satisfactorily shown to have been within the applicable period of employment.[5] By this reasoning heart disease "manifests itself" when it produces symptoms indicative of its presence that are capable of being discerned by medical tests regardless whether they are in fact discerned. This reading is untenable. We cannot say that a symptom manifests itself when it has not in fact been revealed to anyone.[6]

---

[5] We imply no view on the latter premise.

[6] However, if there is evidence which shows the time when the disabling heart trouble first produced undetected signs capable of detection and that time precedes the applicable period of employment the presumption should be unavailing. That circumstance does not entail the view that heart trouble which is first detected during the applicable period of employment has not "manifested itself" during that period. Rather, in such a case the presumption is

Moreover, this alternative reading of "manifests itself" is no more plausible than that the term means to give evidence that is detected leading to a medical diagnosis. If such a construction were semantically permissible, the statute would be ambiguous.[7] In that event, we would be constrained to accept the application of the language that favors Smith. ■ "Although the employee bears the burden of proving that his injury was sustained in the course of his employment, the established legislative policy is that the Workmen's Compensation Act must be liberally construed in the employee's favor (Lab. Code, § 3202), and all reasonable doubts as to whether an injury arose out of employment are to be resolved in favor of the employee." (*Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451].)

## Disposition

The only tenable reading of section 3212.5 applicable to this case shows that Smith was entitled to the presumption afforded by the section. The Board's decision was based upon the contrary view. The decision of the Board is annulled and the case is remanded to the Board for proceedings consistent with this opinion.

Sparks, J., and Davis, J., concurred.

Respondents' petition for review by the Supreme Court was denied September 6, 1989.

---

"controverted by other evidence" which allows the Board to find the presumption has been overcome. (See § 3212.5.)

[7] "The question of meaning is framed by the competing claims of the parties regarding the application of the [contested] language to the material facts of the case. (Citations.) [¶] These claims must then be tested against the permissible uses of the language upon which the claims are founded, for the meaning of language is to be found in its usage and the occasion of a usage is an application of the language to particular circumstances." (*National Auto. & Casualty Ins. Co.* v. *Contreras* (1987) 193 Cal.App.3d 831, 836 [238 Cal.Rptr. 627].) Thus a material ambiguity appears only if the semantically permissible applications of the language to the material facts of the case reveal a conflict of significance to its outcome. In such case some rule of resolution must be applied as a tie-breaker.